OPINION
{¶ 1} Defendant-appellant, Mount Carmel Health System ("Mount Carmel"), appeals from the February 20, 2007 decision and entry of the Franklin County Court of Common Pleas partially granting the motion of plaintiff-appellee, Mary A. Legg, to compel *Page 2 
Mount Carmel to produce documents in discovery. Because the order Mount Carmel appeals is not final and appealable, the appeal is dismissed.
 {¶ 2} As a result of the medical care plaintiff received for ovarian cancer, plaintiff in May 2002 filed a medical malpractice action against Mount Carmel and several staff physicians at Mount Carmel East Hospital. As permitted under Civ.R. 41(A)(1), plaintiff voluntarily dismissed her original complaint on February 24, 2004 and re-filed the action on February 22, 2005. Underlying the discovery order at issue here is plaintiff's claim that Mount Carmel negligently credentialed Robert Hallet, M.D. who, plaintiff alleged, negligently cared for, diagnosed, and treated her ovarian cancer.
 {¶ 3} Seeking Mount Carmel's personnel and credentialing file regarding Dr. Hallet, plaintiff served Mount Carmel with discovery requests, including subpoenas duces tecum issued in September 2006 upon the chairman of Mount Carmel's obstetric and gynecology department and its director of medical staff services. In response, Mount Carmel moved for a protective order and to quash the subpoenas, arguing the subpoenas were an improper means of discovery and the records plaintiff requested are privileged and therefore not discoverable. At the trial court's request, the parties stipulated in November 2006 that Dr. Hallet's credentialing file be submitted to the court for an in camera inspection to determine if any or all of the credentialing file was discoverable.
 {¶ 4} In a December 4, 2006 decision and entry, the trial court found the subpoenas violated Civ.R. 45(A)(1)(c)'s provision that prohibits using a subpoena to obtain the production of documents from a party. Granting Mount Carmel's motion to quash the subpoenas, the court denied Mount Carmel's motion for a protective order as moot and noted "the issue of which records are discoverable may remain in this case." *Page 3 
 {¶ 5} On January 4, 2007, plaintiff filed a motion under Civ.R. 37 to compel Mount Carmel to produce the following documents for inspection and copying:
 Complete copies of any and all documents of any kind, nature and/or description pertaining in any manner whatsoever to the application for and/or granting of medical and/or surgical staff privileges with Mount Carmel Health and any of its affiliated hospitals, including Mount Carmel East Hospital, by and for Defendant Hallet, for staff privileges in effect in the year 2000, including, but not limited to:
 a. All applications for staff privileges by Defendant Hallet, together with all supporting documentation accompanying said applications;
 b. Any and all documentation regarding evaluations, complaints, and/or performance reviews;
 c. All documents received by Defendant Hallet pertaining in any fashion to the granting, denial and/or modification of staff privileges;
 d. Copies of all licenses, certifications, and/or CME credits (from 1996-2000) submitted by Defendant Hallet; and
 e. Any and all standards and/or procedures to be applied by Defendant Mount Carmel and/or its medical staff in considering and acting upon applications for staff membership and professional privileges.
 {¶ 6} On January 17, 2007, Mount Carmel filed a memorandum contra plaintiff's motion to compel. Mount Carmel indicated its willingness to comply with plaintiff's request in paragraph "e," but objected to any further discovery, asserting plaintiff's other document requests involved privileged peer-review and credentialing documents that are protected from discovery under R.C. 2305.252 and 2305.253. In a February 20, 2007 decision and entry, the trial court granted in part and denied in part plaintiff's motion to compel. *Page 4 
 {¶ 7} Noting Mount Carmel did not oppose the production of documents pertaining to its credentialing standards and procedures, the trial court ordered Mount Carmel to produce the materials plaintiff requested in paragraph "e." The court denied plaintiff's document requests in paragraphs "a," "c," and "d," together with her request in paragraph "b" for "evaluation" and "performance review" documents, concluding all such documents are protected from discovery because they fall within the scope of the peer review privilege contained in R.C. 2305.252. The trial court nonetheless found the peer review privilege does not protect from discovery all documents pertaining to "complaints" made against Dr. Hallet, the subject of some of plaintiff's requests in paragraph "b."
 {¶ 8} Explaining, the trial court noted that R.C. 2305.252 extends a peer review privilege to "proceedings and records within the scope of a peer review committee of a health care entity." The parties do not dispute that Mount Carmel is a "health care entity" as defined in R.C.2305.25(A)(1). The trial court determined Mount Carmel's risk management department has complaint files that are (1) segregated and kept in a separate location from Mount Carmel's credentialing records and (2) used for purposes other than peer review.
 {¶ 9} In reaching that conclusion, the trial court relied on an affidavit of Mount Carmel East Hospital's risk manager, who attested that when Mount Carmel receives a complaint about a healthcare provider, "a complaint file for that individual healthcare provider is created." (Affidavit of Christina Richards.) According to the affidavit,"[t]he purpose of the file is to document the investigation andfollow-up to resolve the patient's complaint, as well as to compile a summary of information, if any, for possible consideration at the timeof a physician's re-credentialing and re-appointment process *Page 5 
which is treated as a confidential peer-review process by the Hospital." Id. (Emphasis added.) The hospital keeps each such complaint file "in a locked cabinet in the Risk Management Department and access to these files is strictly limited to the Risk Manager and a limited number of select members of the medical staff who are on peer-review committees." Id.
 {¶ 10} Based upon the affidavit, the court determined the statutory purpose of a "peer review committee," as defined in R.C. 2305.25(E)(1), is narrower in function and scope than the broader "risk management" Mount Carmel conducts to avoid litigation and liability against a hospital, to preserve hospital reputation, and to investigate and resolve patient complaints. Concluding Mount Carmel's risk management department's complaint files do not fall within the scope of the peer review privilege, the court ordered Mount Carmel to produce "patient complaints, and complaints from others who are not acting as hospital staff or medical personnel with privileges at the hospital, pertaining to Dr. Hallet." (Feb. 20, 2007 decision and entry, 1-2.) The court further required Mount Carmel to produce "any other documents within thehospital's Risk Management Department's complaint files pertaining to such complaints (except for documents prepared in anticipation of litigation or documents created as communication with or from legal counsel)." Id. (Emphasis added.) The court's order lastly instructed that "[a]ny such documents shall be produced from the hospital's RiskManagement files rather than from the peer-review [credentialing] files[that were previously] submitted to this court for an in camerainspection." (Emphasis added.)
 {¶ 11} In ordering Mount Carmel to produce documents from its risk management department's complaint files, the court expressly noted that "[i]ssuance of this order *Page 6 
should not be construed as a finding by this court that there are any such complaints pertaining to Dr. Hallet in the Hospital's Risk Management files or in the confidential peer-review file [that were] submitted for the in camera inspection. This Court merely orders that the documents be produced from the Risk Management files if theyexist." Id. (Emphasis added.)
 {¶ 12} Mount Carmel appeals from the trial court's February 20, 2007 order, assigning the following errors:
 I. The trial court erred to the prejudice of Mount Carmel when it refused to find that Plaintiffs were collaterally estopped from filing a motion to compel when Plaintiffs failed to appeal the trial court's final order quashing Plaintiffs' subpoena.
 II. The trial court erred to the prejudice of Mount Carmel when it held that complaints presented to Mount Carmel's peer review committee were discoverable, which order violated the plain language of R.C. 2305.252 and 2305.253.
 III. The trial court erred to the prejudice of Mount Carmel when it strictly construed an unambiguous statute, R.C. 2305.252.
 {¶ 13} As a preliminary matter, because this court can only "review and affirm, modify, or reverse judgments or final orders," we first must determine whether the trial court's February 20, 2007 order is final and appealable. See Section 3(B)(2), Article IV, Ohio Constitution. "* * * The entire concept of `final orders' is based upon the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof." Briggs v. Mt. Carmel Health Sys., Franklin App. No. 07AP-251,2007-Ohio-5558, at ¶ 7, quoting Noble v. Colwell (1989),44 Ohio St.3d 92, 94, quoting Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303,306. "A judgment that *Page 7 
leaves issues unresolved and contemplates that further action must be taken is not a final appealable order." Briggs, at ¶ 7, quotingState ex rel. Keith v. McMonagle, 103 Ohio St.3d 430, 2004-Ohio-5580, at ¶ 4, citing Bell v. Horton (2001), 142 Ohio App.3d 694, 696. "A `final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."Briggs, at ¶ 7, quoting Catlin v. United States (1945), 324 U.S. 229,233.
 {¶ 14} Mount Carmel contends the trial court's February 20, 2007 order is a final appealable order pursuant to R.C. 2505.02(B)(4). According to its provisions, an order granting or denying a provisional remedy is final and subject to review if the order (1) "in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," and (2) "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." To satisfy R.C. 2505.02(B)(4) and constitute a final appealable order, an order must grant or deny a provisional remedy and both additional provisions must apply. By statutory definition, a "provisional remedy" is "a proceeding ancillary to an action, including, but not limited to, a proceeding for * * * discovery of privileged matter * * *." R.C. 2505.02(A)(3).
 {¶ 15} Generally, discovery orders are interlocutory and not immediately appealable. See Walters v. Enrichment Ctr of Wishing Well,Inc. (1997), 78 Ohio St.3d 118, 120-121; State ex rel. Steckman v.Jackson (1994), 70 Ohio St.3d 420, 438; Briggs, supra, at ¶ 11. The scope of pretrial discovery is broad and parties may obtain discovery *Page 8 
regarding any matter that is not privileged and is relevant to the subject matter. Civ.R. 26(B)(1).
 {¶ 16} To the extent an order pertains to matters other than those concerning discovery of privileged matters, the order is deemed interlocutory and therefore not final and appealable. See Covington v.The MetroHealth Sys., 150 Ohio App.3d 558, 2002-Ohio-6629, ¶ 21, appeal not allowed, 98 Ohio St.3d 1538, 2003-Ohio-1946. See, also, Chambers v.AKAAS Corp., Inc., Lorain App. No. 05CA008791, 2006-Ohio-4156, discretionary appeal not allowed, 112 Ohio St.3d 1442, 2007-Ohio-152
(finding no final appealable order where the appellant did not appeal from the protection denied to actual privileged information). By contrast, orders requiring the disclosure of privileged information are final and appealable. See, e.g., Nester v. Lima Mem. Hosp. (2000),139 Ohio App.3d 883, appeal not allowed (2001), 91 Ohio St.3d 1474;Schottenstein, Zox Dunn v. McKibben, Franklin App. No. 01AP-1384, 2002-Ohio-5075, at ¶ 19; Callahan v. Akron Gen. Med. Ctr, Summit App. No. Civ.A. 22387, 2005-Ohio-5103, at ¶ 28. "Privilege must rest upon some specific constitutional or statutory provision." State ex rel.Grandview Hosp. Medical Ctr. v. Gorman (1990), 51 Ohio St.3d 94, 95.
 {¶ 17} Within those parameters, Mount Carmel asserts the trial court granted a "provisional remedy." It therefore contends the court's February 20, 2007 order is final and appealable pursuant to R.C.2505.02(B)(4) because it ordered the discovery of documents that are privileged and statutorily protected from discovery under R.C. 2305.252
and 2305.253.
 {¶ 18} R.C. 2305.252, the "peer review privilege," provides that documents or records cannot be obtained from a peer review committee's records or proceedings. Doe *Page 9 v. Mount Carmel Health Systems, Franklin App. No. 05AP-435,2005-Ohio-6966, at ¶ 16, appeal not allowed, 109 Ohio St.3d 1480,2006-Ohio-2466. Pursuant to the statute, a court's order to produce for discovery or for use at trial a peer review committee's records or proceedings is a final, appealable order. R.C. 2305.252. A "peer review committee" conducts credentialing activities for health care providers, such as Dr. Hallet, and conducts other attendant hearing processes "initiated as a result of a peer review committee's recommendations or actions." R.C. 2305.25(E)(1).
 {¶ 19} Even so, the statutorily conferred peer review privilege is not absolute. Grandview Hosp., supra, at 96; Doe, supra, at ¶ 15. The peer review privilege does not extend to "information, documents, or records otherwise obtainable from original sources," even if the documents or records were produced or presented during peer review proceedings. R.C.2305.252; Grandview Hosp., supra; Doe, at ¶ 16; Wilson v. BarnesvilleHosp., 151 Ohio App.3d 55, 2002-Ohio-5186, at ¶ 14; Brzozowski v. Univ.Hosp. Health Systems, Cuyahoga App. No. 85097, 2005-Ohio-2628, at ¶ 19, appeal not allowed, 106 Ohio St.3d 1558, 2005-Ohio-5531. Thus, although documents or records cannot be obtained from a peer review committee's proceedings or records, "[s]uch documents and records are available from the original source of the information contained therein." Doe, at ¶ 16; Cook v. Toledo Hosp., 169 Ohio App.3d 180, 2006-Ohio-5278, at ¶ 31; Tenan v. Huston, 165 Ohio App.3d 185, 2006-Ohio-131, at ¶ 23.
 {¶ 20} R.C. 2305.253 addresses the confidentiality of incident and risk management reports. The statute provides that such reports and their contents are not subject to discovery and are not admissible in the trial of a tort action. R.C. 2305.25(D) defines an "incident or risk management report" as "a report of an incident involving injury *Page 10 
or potential injury to a patient as a result of patient care provided by health care providers * * * that is prepared by or for the use of a peerreview committee of a health care entity and is within the scope of thefunctions of that committee." (Emphasis added.) This court addressed the privilege accorded incident and risk management reports, concluding "[t]he privilege granted by R.C. 2305.253 specifically targets documents that report an incident involving injury suffered by a patient while receiving medical care by a health care provider." Doe, supra, at ¶ 18. If "this type of document is prepared by-or for the use of-a peer review committee, it is to be confidential and not subject to discovery." Id. Nonetheless, "similar to the peer review privilege as a whole, the unavailability of documents does not render all information pertaining to an incident beyond the scope of discovery. A person may testify, or produce evidence, regarding patient care that is within his or her personal knowledge. R.C. 2305.253(B)(2)." Id.; see, also, R.C. 2305.252.
 {¶ 21} The purpose of the statutes is not to hinder lawsuits, but to create limited protection not only to individuals who provide information to peer review committees but also to those who serve on such committees, thereby encouraging a free flow of information without fear of reprisal in the form of civil liability. Browning v. Burt
(1993), 66 Ohio St.3d 544, 562. See, also, Jacobs v. Frank (1991),60 Ohio St.3d 111. The statutes neither expressly nor implicitly give blanket immunity to a health care entity for negligence in granting or continuing staff privileges to an incompetent physician.Browning, supra. "If all materials viewed and utilized by peer review committees were deemed undiscoverable, a hospital could never be held accountable for its choice in staffing * * * ." Wilson, supra, at ¶ 23. As the court in Wilson aptly observed, "[t]his is precisely why courts continue to recognize the tort of negligent credentialing: so that hospitals may be held *Page 11 
accountable by third parties for the breach of their duty to hire only competent physicians." Id. at ¶ 24. See Albain v. Flower Hosp. (1990),50 Ohio St.3d 251, paragraph two of the syllabus (discussing negligent credentialing and the duty of health care entities to grant staff privileges only to competent physicians).
 {¶ 22} Mount Carmel contends its risk management department meets the definition of a peer review committee when it is accepting and processing complaints relating to health care, including complaints concerning physicians. According to Mount Carmel, the peer review committee, as part of the peer review process, reviews each complaint relating to a physician, and the complaint becomes part of the peer view committee's records. Thus, Mount Carmel contends, any complaint made against its physicians, including Dr. Hallet, is clearly a peer review document that falls within the scope of the peer review committee's functions, even though the physician complaint files that the risk management department maintains may have other uses.
 {¶ 23} According to the affidavit of Mount Carmel's risk manager, the risk management department, upon receiving a patient's complaint regarding a physician, creates a complaint file "to document the investigation and follow-up to resolve the patient's complaint," and a summary of information is compiled for "possible consideration" at the time of the re-credentialing, peer review process for the physician. The affidavit thus does not support Mount Carmel's contention on appeal that every complaint Mount Carmel's risk management department receives is a peer review document "prepared by or for the use of a peer review committee" or is even considered in the peer review committee. *Page 12 
 {¶ 24} Here, the trial court's order correctly prohibited the disclosure of any complaint documents pertaining to Dr. Hallet from Mount Carmel's peer review committee proceedings or records. Such documents are privileged and protected from discovery. Doe, supra, at ¶ 16. The trial court narrowly tailored its order to producing documents only from the risk management department's files. Any complaint documents contained in such files that were not prepared by or for the use of Mount Carmel's peer review committee are subject to discovery and may be obtained "from the original source of the information contained therein," even if the documents were produced or presented during peer review proceedings. Grandview Hosp., supra; Doe, at ¶ 15-16;Cook, supra, at ¶ 31; Wilson, supra, at ¶ 14; Brzozowski, supra, at ¶ 19; Tenan, supra, at ¶ 23.
 {¶ 25} In Ohio, the burden of showing that documents are confidential or privileged rests upon the party seeking to exclude the documents from discovery. Covington, supra, at ¶ 25, citing Lemley v. Kaiser (1983),6 Ohio St.3d 258, 263-264; Smith v. Manor Care of Canton, Inc., Stark App. No. 2005-CA-00100, 2006-Ohio-1182, at ¶ 61-62; Rinaldi v. City ViewNursing Rehab. Center, Inc., Cuyahoga App. No. 85867, 2005-Ohio-6360, at ¶ 22, appeal not allowed, 109 Ohio St.3d 1424, 2006-Ohio-1967. Mount Carmel cannot complain for the first time on appeal that the trial court ordered it to disclose "privileged" documents where Mount Carmel failed to offer any evidence that complaints pertaining to Dr. Hallet (1) exist within the risk management department's files and therefore are subject to production in camera, and (2) are privileged and therefore protected from discovery. See Manor Care, supra; Rinaldi, supra.
 {¶ 26} Indeed, in ordering Mount Carmel to produce complaints pertaining to Dr. Hallet that are contained within its risk management files, the trial court expressly noted it *Page 13 
was not making a finding that any such documents exist; it merely ordered Mount Carmel to produce the documents "if they exist." The record before this court does not identify or appear to contain any such documents. Nor does the record reflect that Mount Carmel produced any risk management department documents pursuant to the trial court's order. Moreover, the record does not indicate that Mount Carmel submitted any risk management department files to the trial court for an in camera review so the court could determine whether privilege protects any complaint documents contained in the files from discovery.
 {¶ 27} The trial court's in camera inspection of any risk management documents pertaining to Dr. Hallet, for which Mount Carmel claims a privilege and protection from discovery, is a necessary preliminary step and is the most appropriate way to weigh claims of privilege regarding the documents. See Grandview Hosp., supra, at 96, citing Henneman v.Toledo (1988), 35 Ohio St.3d 241; Akers v. Ohio State Univ. Med.Ctr., Franklin App. No. 04AP-575, 2005-Ohio-5160; Doe, at ¶ 13;Gates v. Brewer (1981), 2 Ohio App.3d 347. Without reviewing the actual documents, neither the trial court nor this court can make an informed decision as to whether any of the information contained in the documents is privileged and protected from discovery. Id. Moreover, any issues that may be the subject of an appeal would be rendered moot if the trial court determines in an in camera review that either (a) the risk management files contain no "complaints" pertaining to Dr. Hallet or (b) all of the information contained in the risk management complaint files is privileged. Conversely, if the trial court determines in an in camera review that some information contained with the risk management department's file is *Page 14 
subject to disclosure, Mount Carmel may pursue an appeal at that time. Mount Carmel's appeal at this time is simply premature.
 {¶ 28} Because the trial court did not order the production of complaint documents from the peer review committee's proceedings or records, the February 20, 2007 discovery order is not a final appealable order pursuant to R.C. 2305.252. Similarly, because Mount Carmel did not demonstrate the trial court's order grants discovery of privileged material, it failed to show the order grants a "provisional remedy" under R.C. 2505.02(B)(4). The trial court's discovery order therefore is interlocutory and is not final and appealable pursuant to R.C. 2502.02. Accordingly, we dismiss this appeal for lack of jurisdiction.
Appeal dismissed.
 FRENCH, J., and T. BRYANT, J., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1