[Cite as *Smith v. Chen*, 2013-Ohio-4931.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Henry Smith,                                          :

      Plaintiff-Appellee,                      :

                                                  No. 12AP-1027

v.                                                   :           (C.P.C. No. 10CVA-12-18058)

Ying H. Chen, D.O. et al.,                           :           (REGULAR CALENDAR)

      Defendants-Appellants.                   :

---

D E C I S I O N

Rendered on November 7, 2013

---

*Colley Shroyer & Abraham Co., LPA,* and *David I. Shroyer,* for appellee.

*Hammond Sewards & Williams,* and *Frederick A. Sewards,* for appellants.

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendants-appellants, Ying H. Chen, D.O., and OrthoNeuro (collectively "defendants"), appeal from a judgment of the Franklin County Court of Common Pleas granting the motion to compel discovery of plaintiff-appellee, Henry Smith ("plaintiff"). Because plaintiff established good cause for production of surveillance video, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On December 10, 2010, plaintiff filed a medical malpractice complaint against defendants. Plaintiff alleged that on January 15, 2007, Dr. Chen, a neurological spine surgeon employed by OrthoNeuro, performed surgery on plaintiff's back. Plaintiff claimed that following the surgery he suffered from weakness and pain in his neck and

back, which he believed was the result of "intraoperative spinal coed ischemia caused by the surgery procedure." (Complaint, ¶ 15.) Plaintiff had an additional surgery on June 9, 2007 to relieve his weakness and pain. Plaintiff alleged that he now suffers from cervical spondylosis, constantly experiences progressing pain, discomfort, and weakness in his neck and back, and has entered into chronic pain management and is on chronic disability. Plaintiff asserted that he has incurred permanent medical expenses, "loss of enjoyment of life, inability to do usual functions, lost wages, and a lost earning capacity." (Complaint, ¶ 24.)

{¶ 3} Defendants filed an answer to the complaint, and the parties proceeded with discovery. Plaintiff was deposed on January 6, 2012. On March 12, 2012, defendants filed their final pre-trial statement, identifying Jeanne Knable and Jeremy Grimes as two individuals who would testify for the defense regarding plaintiff's activities.

{¶ 4} On June 18, 2012, plaintiff filed a request for production of documents, requesting copies of " 'any and all investigative reports, videotapes, audiotapes, witness statements, etc., that were prepared by Boerger Investigative Services, Jeanne Knable or Jeremy Grimes, concerning Henry Smith's activities or disabilities intended for use in the above matter.' " (Motion to Compel, 2.) Defendants objected to the request, asserting that any such video surveillance materials were privileged attorney work-product, which defendants intended to use solely as impeachment evidence.

{¶ 5} On November 8, 2012, plaintiff filed a motion to compel the production of the surveillance evidence, or, alternatively, a motion in limine to prevent defendants from introducing the surveillance evidence during trial. Plaintiff noted that he had no knowledge of what might be on the surveillance video and asserted that if the video were not produced he would have "no opportunity to ascertain the quality or accuracy of what the video portrays" or whether "the video images ha[d] somehow been manipulated or if the person in the video [was] even, actually, Plaintiff." (Motion to Compel, 4.)

{¶ 6} Defendants filed their memorandum contra plaintiff's motion to compel on November 12, 2012. Defendants asserted in the motion that, Franklin County Court of Common Pleas Local Rule ("Loc.R.") 41.04 provided that parties need not disclose impeachment exhibits in their pre-trial statement, Loc.R. 41.04 recognized the privileged

nature of impeachment evidence. Defendants further asserted that, as they prepared the video for trial, it was attorney work-product and plaintiff had not established good cause for its production.

{¶ 7} On December 5, 2012, the court issued a decision and entry granting the motion to compel. The court determined that Loc.R. 41.04 had limited applicability, as the rule only pertained to whether a party was required to disclose the existence of certain types of evidence to the opposing party before trial. The court found that plaintiff had a compelling need to view the video prior to trial, in order to ascertain whether defendants had manipulated the video. Because defendants had already taken plaintiff's deposition, the court found that even "if the contents of the video are shown to Plaintiff, the impeachment value claimed by Defendants still stands," as plaintiff's "sworn testimony [was] 'frozen.' " (Decision and Entry, 4.) The court concluded that the "surprise and unfairness to Plaintiff outweigh[ed] the considerations of attorney work product privilege offered by Defendants." (Decision and Entry, 4.) Defendants timely filed an appeal from the court's decision.

## II. ASSIGNMENT OF ERROR

{¶ 8} Defendants sole assignment of error asserts as follows:

> The trial court erred, as a matter of law, when it granted Plaintiff's Motion to Compel Discovery of Defendants' Surveillance Videotape since its purpose was to be used by Defendants for impeachment purposes only and it constitutes Defendants' counsel's work product.

## III. MOTION TO COMPEL PROPERLY GRANTED

{¶ 9} Defendants assert the trial court erred in granting plaintiff's motion to compel, as the surveillance video is privileged attorney work-product and defendants will only use the video as impeachment evidence at trial.

{¶ 10} Before addressing the merits of the case, we note that appellate courts can only "review and affirm, modify, or reverse judgments or final orders." Ohio Constitution, Article IV, Section 3(B)(2). A judgment that leaves issues unresolved and contemplates further action by the court is not a final appealable order. *Briggs v. Mt. Carmel Health Sys.*, 10th Dist. No. 07AP-251, 2007-Ohio-5558, ¶ 7. Thus, discovery orders are generally

interlocutory orders which are not immediately appealable. *Legg v. Hallet*, 10th Dist. No. 07AP-170, 2007-Ohio-6595, ¶ 15.

{¶ 11} While general discovery orders remain interlocutory, "orders requiring the disclosure of privileged information are final and appealable." *Id.* at ¶ 16. R.C. 2505.02(B)(4) specifies that an order granting or denying a provisional remedy is final and subject to review if the order (1) "in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," and (2) "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." A "provisional remedy" is "a proceeding ancillary to an action, including, but not limited to, a proceeding for * * * discovery of privileged matter." R.C. 2505.02(A)(3). The "work-product doctrine provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation." (Emphasis sic.) *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 55. As the order at issue determined that the surveillance video was attorney work-product subject to discovery for good cause, it is a final appealable order which this court may properly review.

{¶ 12} "A trial court enjoys broad discretion in the regulation of discovery, and an appellate court will not reverse a trial court's decision to sustain or overrule a motion to compel discovery absent an abuse of discretion." *Stark v. Govt. Accounting Solutions, Inc.,* 10th Dist. No. 08AP-987, 2009-Ohio-5201, ¶ 14. Generally, whether "information sought in discovery is confidential and privileged 'is a question of law that is reviewed de novo.' " *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 13, quoting *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. However, "Ohio courts do not review all issues surrounding privilege de novo." *Id.* at ¶ 16. Whether materials are protected by the attorney work-product privilege, and the determination of the good-cause exception to that privilege, are not characterized as "questions of law, but as 'discretionary determinations to be made by the trial court.' " *Id.*, quoting *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271 (1983). *See id.* at ¶ 18 (noting that the appropriate standard of review "ultimately

depends upon whether an appellate court is reviewing a question of law or a question of fact"). Accordingly, we review the trial court's determination of good cause for an abuse of discretion.

{¶ 13} "The scope of pretrial discovery is broad and parties may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter." *Legg* at ¶ 15, citing Civ.R. 26(B)(1). The work-product doctrine provides for a limited privilege which protects documents, electronically stored information and other tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Civ.R. 26(B)(3).

{¶ 14} The work-product doctrine emanates from the United States Supreme Court decision in *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), in which the Supreme Court recognized that proper case preparation demands that an attorney "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. If an attorney's work-product prepared in anticipation of litigation were "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. * * * Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial." *Id.* at 511. The *Hickman* court acknowledged, however, that "[w]here relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.*

{¶ 15} Thus, the work-product doctrine provides " 'a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary.' " *Squires, Sanders & Dempsey* at ¶ 55, quoting *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir.2006). *See also* Civ.R. 26(A). The doctrine is " 'an intensely practical one, grounded in the realities of litigation in our adversary system,' and the privilege afforded by the work-product doctrine is not absolute." *Id.*, quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

{¶ 16} Civ.R. 26(B)(3) thus provides that an attorney's materials prepared in anticipation of litigation are discoverable "only upon a showing of good cause therefor." The party seeking discovery carries the burden of demonstrating good cause for the

sought-after materials. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 16. "[A] showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials—i.e., a showing that the materials, or the information they contain, are relevant and otherwise unavailable." *Id.* More recently, the Supreme Court of Ohio has explained that "attorney work product, * * * may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey* at ¶ 60.

{¶ 17} The parties do not dispute that the surveillance video was prepared at the direction of defendants' counsel in anticipation of litigation. Thus, they do not dispute that the surveillance video is attorney work-product. Accordingly, the parties simply dispute the court's finding that plaintiff established good cause for the production of the surveillance video.

{¶ 18} Defendants assert that Loc.R. 41.04 recognizes the "privileged nature of [impeachment] evidence." (Defendants' brief, 4.) Loc.R. 41.04 states, in pertinent part, that a party must list in their pre-trial statement "all evidence expected to be offered into evidence, except exhibits to be used only for impeachment." Loc.R. 41.04 simply details what information must be contained in a party's pre-trial statement. The rule does not state that evidence is privileged solely because a party intends to use such evidence for impeachment purposes. Rather, the general rules of discovery would apply to such evidence. *See* Civ.R. 26(B)(1).

{¶ 19} As noted above, this court reviews only final appealable orders. Thus, "the privilege issue is the only part of the trial court's order that comports with the definition of 'final order' under R.C. 2505.02(B)." *Garcia v. O'Rourke*, 4th Dist. No. 02CA16, 2003-Ohio-2780, ¶ 11. Defendants' contentions regarding Loc.R. 41.04, and the trial court's ruling on the same, are thus not properly before this court. Rather, the only issue properly before this court is whether the surveillance video is privileged attorney work-product subject to production for good cause.

{¶ 20} Defendants' reliance on *Thrope v. Rozen*, 1st Dist. No. C-960143 (Oct. 3, 1997) is similarly misplaced, as *Thrope* does not concern discovery of attorney work-product. In *Thrope,* the defense introduced a surveillance video during its case-in-chief,

"which contradicted [the plaintiff's] earlier testimony concerning the extent of his disabilities." *Id.* The plaintiff argued on appeal that the trial court erred in allowing the defendant to introduce the video, as the defendant had not produced the video in discovery. The court noted, however, that the plaintiff had not made a discovery request which would have obligated the defendant to produce the video. Moreover, in *Thrope,* the defendant did provide the plaintiff with "both the edited and the unedited versions of the tape the day before the tape was used at trial." *Id.* As *Thrope* does not concern the work-product privilege, and as the defendant in *Thrope* voluntarily produced the surveillance video to the plaintiff before trial, *Thrope* is inapplicable in the instant case.

{¶ 21} Defendants assert that the trial court employed the incorrect standard to determine whether plaintiff established good cause. Defendants note that the trial court "used a balancing test to determine whether the video should be produced at trial when it held '[t]he surprise and unfairness to Plaintiff outweighs the consideration of attorney work product privilege offered by Defendants.' " (Appellants' brief, 6.)

{¶ 22} As noted above, under Civ.R. 26(B)(3), a party may establish good cause by demonstrating: (1) that the work-product is directly at issue in the case, (2) there is a compelling need for the information, and (3) the evidence cannot be obtained elsewhere. *Squires, Sanders & Dempsey* at ¶ 60. We note that, while our independent research does not reveal an Ohio case which has directly considered the issue before this court, regarding discovery of a surveillance video prepared by a defendant in anticipation of litigation in a personal injury action, our research reveals several federal courts which have considered the issue. *See First Bank of Marietta v. Mascrete, Inc.*, 79 Ohio St.3d 503, 508 (1997) (noting that while "federal [case] law is not controlling with regard to interpretation of the Ohio Rules of Civil Procedure, it can be instructive where, as here, the rules are similar"); Fed.R.Civ.P 26(b)(3) (providing that attorney work-product is discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

{¶ 23} The trial court found that the video was directly at issue in the case, noting that the video "may affect the substantive issue of damages and may go to the heart of

whether Plaintiff is injured as claimed."  (Decision and Entry, 4.)  Defendants assert that the video is not directly at issue, as it does not provide evidence regarding the applicable standard of care or breach.  *See Korreckt v. Ohio Health*, 10th Dist. No. 10AP-819, 2011-Ohio-3082, ¶ 11, citing *Adams v. Kurz,* 10th Dist. No. 09AP-1081, 2010-Ohio-2776, ¶ 11 (stating the elements of medical malpractice claim).   Defendants further assert that the video is not "necessary or compelling for the Plaintiff to establish his damages," as plaintiff can establish his damages "through his own testimony, medical records, the testimony of his experts and other witnesses he has identified that he will call at trial." (Defendants' brief, 9.)

{¶ 24}  The court's conclusion that the surveillance video will affect the substantive issue of damages was not an abuse of discretion.   Plaintiff claimed in his complaint that he suffered a loss of enjoyment of life and an inability to engage in daily activities as a result of his injuries.   Thus, the surveillance video will help to establish or negate the extent of plaintiff's damages.  *See Snead v. Am. Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150 (E.D. Pa.1973) (noting that surveillance films in a personal injury case "which would tend to show a plaintiff's physical condition, how he moves, and the restrictions which are his, are highly relevant—perhaps they will establish the most important facts in the entire case"); *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227, 228 (D.Mass.2006) (noting that "[i]n personal injury cases, surveillance materials are evidence of whether and to what extent a claimant was injured," and because the "existence and extent of injury is the very essence of Plaintiff's claims * * * the surveillance tapes need to be produced"); *Chaisson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir.1993) (finding that surveillance evidence was properly subject to discovery, as "the severity of [the plaintiff's] pain and the extent to which she has lost the enjoyment of normal activity are among the key issues a jury must decide in calculating her damages," thus the surveillance "[e]vidence which would tend to prove or disprove such losses must be considered 'substantive' ").  *Compare Sutton v. Stevens Painton Corp.*, 193 Ohio App.3d 68, 2011-Ohio-841, ¶ 27 (8th Dist.).  Because the video at issue goes to the ultimate issue of damages, the trial court did not err in determining that the video was directly at issue in the case.

{¶ 25} We also note that while defendants claim they intend to use the video as impeachment evidence only, if the video refutes plaintiff's claims regarding the extent of his injuries, the video will also constitute substantive evidence on damages. *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure*, Section 2015 (3d Ed.2009) (noting that "surveillance evidence or evidence of prior injuries is useful for impeachment but it also has an important substantive aspect since it goes directly to the issue of the extent of plaintiff's injury").

{¶ 26} The trial court also found that plaintiff demonstrated a compelling need for the video. The court relied on *Snead* to support its finding that plaintiff's interest in obtaining the video before trial was greater than defendants' interest in concealing the video. In *Snead*, the court found that a plaintiff in a personal injury action was entitled to discover a surveillance video prepared by the defendant. The *Snead* court observed that a camera "may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. * * * The editing and splicing of films may change the chronology of events." *Id.* at 150. The *Snead* court concluded that the defense should be required "to disclose the existence of surveillance films or be barred from showing them at trial." *Id.* at 151.

{¶ 27} The *Snead* court's observation, regarding a party's ability to manipulate film images, is perhaps more true today than at the time *Snead* was decided. Today, digital cameras and computer programs permit even the novice photographer to easily edit, enhance, and manipulate digital images. Accordingly, the trial court's conclusion that plaintiff had a compelling need to view the video prior to trial, to ascertain "in advance if the video images have somehow been manipulated, or if the person on the video is actually Plaintiff," was an accurate conclusion. (Decision and Entry, 4.)

{¶ 28} Defendants further assert that the trial court erred in finding that plaintiff's prior deposition testimony protected the impeaching value of the surveillance video. Defendants contend that production will destroy the impeaching value of the evidence, as plaintiff will be able to prepare his trial testimony to conform to the images on the video. While plaintiff may so structure his trial testimony, if plaintiff's trial testimony differs from his deposition testimony, taken before plaintiff had a chance to view the video,

defendants will be able to impeach plaintiff with his deposition testimony. If plaintiff's trial and deposition testimony are the same, then the video will either impeach plaintiff's testimony, or it will not, because plaintiff's testimony will align with the images on the video.

{¶ 29} Moreover, federal courts which have considered the issue conclude that discovery of a surveillance video following the plaintiff's deposition strikes the appropriate balance between the plaintiff's interest in seeing the video before trial and the defendant's interest in retaining the impeaching value of such evidence. *See Wightman v. Reassure Am. Life Ins. Co.*, S.D.Ohio No. 3:05-cv-204 (Nov. 30, 2006) (finding that the "case law on point unanimously supports Defendant's position," that defendant need not produce the surveillance evidence until after plaintiff was deposed); *Donovan v. AXA Equitable Life Ins. Co.*, 252 F.R.D. 82 (D.Mass.2008) (while the court noted that "[m]ost courts, both federal and state, have held that video surveillance tapes, if they plan to be used at trial, must be produced in discovery," the court would not order the surveillance tapes produced until after "the completion of Mr. Donovan's deposition"); *Ward v. CSX Transp., Inc.*, 161 F.R.D. 38, 41 (E.D.N.C.1995) (concluding that "allowing discovery of surveillance materials after the deposition of the plaintiff, but before trial, best meets the ends of justice and the spirit of the discovery rules to avoid surprise at trial").

{¶ 30} Lastly, we note that the tape is under the sole control of defendants. As such, the evidence cannot be obtained elsewhere. *See Bryant v. Trexler Trucking*, D.S.C. No. 4:11-cv-2254-RBH (Jan. 18, 2012), quoting *Tripp v. Severe*, D.Md. No. L-99-1478 (Feb. 8, 2000) (where a party intends to use surveillance footage at trial, " 'courts generally find that the work product privilege is waived given the plaintiff's * * * inability to obtain the substantial equivalent of this record of plaintiff's condition at a particular time and place' ").

{¶ 31} Under the specific facts presented in this case, we find the trial court did not abuse its discretion in granting plaintiff's motion to compel, as plaintiff established good cause for discovery of the surveillance video. The substance of the video may reveal the extent of plaintiff's injuries, which are directly at issue in the case. As defendants have indicated that they may display the video at trial, plaintiff has a compelling interest in

viewing the video to ascertain the video's quality and accuracy. *Compare Ward v. AT Sys. Inc.*, E.D. Pa. No. 07-4249 (Sept. 8, 2008).  As defendants have sole control of the video, plaintiff is unable to obtain the video elsewhere.

## IV.  DISPOSITION

{¶ 32} Based on the foregoing, defendants' sole assignment of error is overruled. Having overruled defendants' assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and McCORMAC, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under the Ohio Constitution, Article IV, Section 6(C).

_____