[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Burnham v. Cleveland Clinic,* Slip Opinion No. 2016-Ohio-8000.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8000

BURNHAM, APPELLEE, *v.* CLEVELAND CLINIC ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Burnham v. Cleveland Clinic,* Slip Opinion No. 2016-Ohio-8000.]

*Privilege—Work-product doctrine—Order compelling production of materials alleged to be protected by the attorney-client privilege is a final, appealable order—Smith v. Chen, limited.*

(No. 2015-1127—Submitted May 4, 2016—Decided December 7, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 102038, 2015-Ohio-2044.

_____

**LANZINGER, J.**

{¶ 1} We accepted this discretionary appeal to resolve whether an order compelling the production of documents allegedly protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4). We also accepted review to clarify our holding regarding privilege, the attorney work-product

doctrine, and R.C. 2505.02(B)(4)(b) in *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633.

{¶ 2} We hold that an order requiring the production of information protected by the attorney-client privilege causes harm and prejudice that inherently cannot be meaningfully or effectively remedied by a later appeal. Thus, a discovery order that is alleged to breach the confidentiality guaranteed by the attorney-client privilege satisfies R.C. 2505.02(B)(4)(b) and is a final, appealable order that is potentially subject to immediate review. Other discovery protections that do not involve common law, constitutional, or statutory guarantees of confidentiality, such as the attorney work-product doctrine, may require a showing under R.C. 2505.02(B)(4)(b) beyond the mere statement that the matter is privileged. Our holding in *Chen* is limited to the latter context.

{¶ 3} Because appellants, the Cleveland Clinic and Cleveland Clinic Health System ("Clinic"), have plausibly alleged that the attorney-client privilege would be breached by disclosure of the requested materials, the order compelling the disclosure is a final, appealable order. Contrary to the dissent's view, we are not characterizing the requested material as being covered by the attorney–client privilege, but are merely requiring appellate review of the trial court's decision. We therefore reverse the dismissal of the appeal and remand to the court of appeals to determine whether the trial court erred in ordering the incident report released.

## BACKGROUND

{¶ 4} In March 2014, appellee, Darlene Burnham, brought a personal-injury action against the Clinic and certain Clinic employees. She alleged that she had slipped and fallen in her sister's hospital room at the Clinic in July 2012. Allegedly, an employee had poured liquid on the floor and had failed to warn Burnham of the hazardous condition.

{¶ 5} During discovery, Burnham requested identification of any person who had made statements or reports about her accident and copies of any written

statements or reports. Although the employee involved was identified, neither party could locate her for deposition. Burnham also requested an incident report that she learned had been created. But the Clinic alleged that the report was not discoverable because it was shielded by various discovery protections, including the attorney-client privilege.

{¶ 6} Burnham filed a motion to compel discovery. The trial court ordered the Clinic to provide Burnham with a privilege log and directed the parties to brief the issue of privilege. Included with the Clinic's privilege log, filed under seal, was a copy of the report and an affidavit from the Clinic's deputy chief legal officer averring that the report had been generated as part of its protocol to notify the Clinic's legal department of events that might be the basis for legal action. After reviewing the parties' briefs and the privilege log, the court concluded that Burnham's motion to compel should be granted. The court ordered the Clinic to produce the July 2012 incident report.

{¶ 7} The Clinic appealed to the Eighth District Court of Appeals, arguing that the incident report was protected by the attorney-client privilege and was not discoverable. The Eighth District dismissed the appeal for lack of jurisdiction, citing *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633. The appellate court held that there was no final, appealable order to review because the Clinic had failed to affirmatively establish that there would be prejudice resulting from disclosure of the incident report sufficient to satisfy R.C. 2505.02(B)(4). 2015-Ohio-2044, ¶ 13.

{¶ 8} We accepted the appeal on one proposition of law: "An order requiring production of privileged documents, conversations or other materials is a final, appealable order pursuant to R.C. 2505.02(B)(4), thereby conferring

jurisdiction over the issue to the court of appeals under Article IV, Section 3(B)(2)."[1]  144 Ohio St.3d 1425, 2015-Ohio-5225, 42 N.E.3d 762.

## LEGAL ANALYSIS

{¶ 9} We accepted jurisdiction to clarify *Chen*, a case that reviewed R.C. 2505.02(B)(4)(b) to determine whether a discovery order involving attorney work product was final and appealable.  As some confusion seems to exist over the breadth of that decision, we limit it solely to its facts.  We see no need to overrule the case altogether despite the impassioned arguments within the lengthy concurring opinion.

{¶ 10} Here, the Clinic asserts that its report is protected under the attorney-client privilege and that an order requiring disclosure should be reviewable immediately.  R.C. 2505.02(B) states that an order is final and reviewable when it is:

> (4) An order that grants or denies a provisional remedy and * * * both of the following apply:
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

A provisional remedy is defined as "a proceeding ancillary to an action, including, but not limited to * * * discovery of privileged matter."  R.C. 2505.02(A)(3).

---

1.  This provision of the Ohio Constitution states: "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *."

**{¶ 11}** *Chen*, although considering the same statutory language, involved only the attorney work-product doctrine rather than the attorney-client privilege and does not determine the outcome here.

### Smith v. Chen

**{¶ 12}** In a medical malpractice action brought by Henry Smith against Dr. Ying Chen and OrthoNeuro ("Chen"), the trial court ordered Chen to disclose a video-surveillance recording that his attorney had prepared for use as impeachment evidence at trial. *Smith v. Chen*, Franklin C.P. No. 10 CV 18058 (Dec. 5, 2012). Chen had claimed that the video was privileged as attorney work product pursuant to Civ.R. 26(B)(3), which allows discovery of the opposing party's attorney work product "only upon a showing of good cause." The trial court found the plaintiff to have shown good cause because the risk to Smith of surprise and unfairness during trial outweighed Chen's interest in nondisclosure prior to trial.

**{¶ 13}** The Tenth District Court of Appeals affirmed the trial court's order. While acknowledging that discovery orders are interlocutory and therefore generally not final and appealable, it held that it had appellate jurisdiction over discovery orders involving privilege. *Smith v. Chen*, 10th Dist. Franklin No. 12AP-1027, 2013-Ohio-4931, ¶ 10. The court of appeals stated that because the attorney work-product doctrine is a "qualified privilege," an order for its disclosure is final and appealable. *Id.* at ¶ 11.

**{¶ 14}** We initially accepted discretionary review on whether an order compelling production of surveillance video created only for impeachment purposes violates the attorney work-product doctrine of Civ.R. 26(B)(3). 138 Ohio St.3d 1447, 2014-Ohio-1182, 5 N.E.3d 666. We later ordered the parties to show cause why the matter should not have been dismissed for lack of a final, appealable order pursuant to R.C. 2505.02. *Smith v. Chen*, 141 Ohio St.3d 1461, 2015-Ohio-370, 24 N.E.3d 1180. In his response, Chen merely repeated the appellate court's observation regarding qualified privileges. 2013-Ohio-4931, at ¶ 11. We

concluded that Chen had failed to satisfy R.C. 2505.02(B)(4)(b), which requires an appellant to establish that he " 'would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.' " *Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 5, quoting R.C. 2505.02(B)(4). We noted:

> This ruling does not adopt a new rule, nor does it make an appeal from an order compelling disclosure of privileged material more difficult to maintain. An order compelling disclosure of privileged material that would *truly* render a postjudgment appeal meaningless or ineffective may still be considered on an immediate appeal.

(Emphasis sic.) *Id.* at ¶ 9. This language concerning "privilege" may seem to extend to all discovery orders. However, we emphasized that *Chen* involved a failure to respond to the issue being adjudicated:

> Dr. Chen and OrthoNeuro have never argued, much less established, that they would not be afforded a meaningful or effective remedy through an appeal after a final judgment is entered by the trial court resolving the entire case. They did not address the issue in any of their briefs here or in the court of appeals. The only reference to the statute defining final, appealable order that Dr. Chen and OrthoNeuro make is in their docketing statement filed in the court of appeals, in which the statute is listed as a statute requiring interpretation or application on appeal. Notably, Dr. Chen and OrthoNeuro again failed to address the requirement in R.C. 2505.02(B)(4)(b) after this court ordered them to show cause why

6

this matter should not be dismissed for lack of a final, appealable order.

*Chen* at ¶ 6.

{¶ 15} In addition to the explicitly limited nature of our holding in *Chen*, differences between the attorney-client privilege and the attorney work-product doctrine make clear why *Chen* does not control the outcome of this case. The attorney-client privilege and the attorney-work-product doctrine provide different levels of protection over distinct interests, meaning that orders forcing disclosure in these two types of discovery disputes do not necessarily have the same result that allows an immediate appeal.

### Attorney-client privilege *v*. work product

{¶ 16} The concurring justice would have us overrule *Chen* and treat attorney work- product and attorney-client privilege the same. But the attorney-client privilege and the attorney work-product doctrine do not share the same origins or occupy the same provisions of statutory or common law. The main purpose behind the attorney-client privilege is to promote " 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 210, 744 N.E.2d 154 (2001), fn. 2, quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). On the other hand "[t]he purpose of the work-product doctrine is 'to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' " *Id.* quoting Civ.R. 26(A)(2). Although both the attorney-client privilege and the work-product doctrine might often apply to the same material, the protections do not overlap completely. *See In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio*, 57 Ohio St.3d 614, 615, 567 N.E.2d 243 (1991).

**{¶ 17}** The attorney-client privilege is one of the oldest privileges recognized in the common law. *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). In Ohio, the testimonial privilege is governed by R.C. 2317.02, which prohibits attorneys from revealing communications that a client made to an attorney. The privilege belongs to the client, and unless a wavier or other exception causes the privilege to not apply, it offers full protection from discovery. R.C. 2317.02(A); Civ.R. 26(B)(1).

**{¶ 18}** By contrast, an attorney's work product is not included among the privileges protected by R.C. 2317.02 or the common law. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (the protections of attorney-client privilege do not extend to an attorney's work or information collected). In Ohio, protection for an attorney's work product is codified in Civ.R. 26, which notably recognizes work product as separate from privileged matters. *See* Civ.R. 26(B)(6) (differentiating between privilege and protection of trial-preparation material). *See also* 1980 Staff Note, Evid. R. 501 (attorney work product is not governed by privilege rules as held in *Hickman*). The protection belongs to the attorney, but Civ.R. 26(B)(6) allows the protection to be removed by an opposing party's demonstration of a need for the materials. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, paragraph two of the syllabus and ¶ 16; Civ.R. 26(B)(3). Thus, the common law and judicial rules recognize the attorney work-product doctrine as a rule that *may* provide protection from discovery.

**{¶ 19}** We have long recognized that the protection against discovery of matters identified as "privileged" in Civ.R. 26(B)(1) is limited to those derived from a specific constitutional or statutory provision. *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 95, 554 N.E.2d 1297 (1990), citing *In re Story*, 159 Ohio St. 144, 147, 111 N.E.2d 385 (1953). Although not technically a privilege in the strict sense, the attorney work-product doctrine is frequently called a privilege in the popular sense. *See, e.g.*, *United States v. Nobles*, 422 U.S.

8

225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55; *Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 9. Using "privilege" as shorthand for the attorney work-product doctrine can be useful in many contexts when it promotes conceptual simplicity. But the use of "privilege" as shorthand does not cause an attorney's work product to be on the same footing as a client's substantive right to confidentiality.

### Interlocutory appeal of discovery orders

{¶ 20} To show that an order for a provisional remedy such as the discovery of privileged or protected materials is final and appealable, R.C. 2505.02(B)(4)(a) requires a showing that the order determines the privilege issue and prevents a judgment in favor of the appellant regarding that issue, while R.C. 2505.02(B)(4)(b) requires a showing that the harm caused by the privilege-related discovery order cannot be meaningfully or effectively remedied by an appeal after final judgment. *See State v. Muncie*, 91 Ohio St.3d 440, 446, 746 N.E.2d 1092 (2001).

{¶ 21} Any order compelling the production of privileged or protected materials certainly satisfies R.C. 2505.02(B)(4)(a) because it would be impossible to later obtain a judgment denying the motion to compel disclosure if the party has already disclosed the materials. But the irreversible nature of the order alone does not satisfy R.C. 2505.02(B)(4)(b), which requires consideration of whether an appeal after judgment can rectify the damage of an erroneous trial court ruling. *Muncie* at 451. Given the differing interests and protections of the attorney-client privilege and the attorney work-product doctrine, the damage that needs to be rectified and the need for immediate appeal may differ as well.

{¶ 22} R.C. 2505.02(B)(4)(b) recognizes that in certain situations, the need for immediate review outweighs the substantial interest in avoiding piecemeal litigation. This recognition has its roots in *Amato v. Gen. Motors Corp.*, 67 Ohio St.2d 253, 423 N.E.2d 452 (1981), *overruled by Polikoff v. Adam*, 67 Ohio St.3d

100, 616 N.E.2d 213 (1993), at syllabus. *Amato* expanded upon the special-proceeding standard now found in R.C. 2505.02(A)(2) and provided a balancing test to determine whether a special proceeding—and thereby a final, appealable order—was involved: "This test weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." *Amato* at 258.

{¶ 23} *Polikoff* rejected this balancing test to determine whether a "special proceeding" existed and overruled *Amato.* Although discovery orders were then held to be interlocutory and not immediately appealable, we noted that it was the General Assembly's prerogative to expand the scope of R.C. 2505.02 to include matters such as discovery orders. *Walters v. Enrichment Ctr. of Wishing Well, Inc.*, 78 Ohio St.3d 118, 122-123, 676 N.E.2d 890 (1997), fn. 2. Shortly after *Walters*, the legislature amended R.C. 2505.02(B)(4)(b), 1998 Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277, 3278, to essentially adopt the *Amato* balancing test. Thus, although *Amato* and related cases were overruled, the reasoning in those cases provides insight into the application of R.C. 2505.02(B)(4)(b).

{¶ 24} Under the *Amato* standard, we had held that discovery orders that breached a protected interest in confidentiality were final, appealable orders. *Humphry v. Riverside Methodist Hosp.*, 22 Ohio St.3d 94, 488 N.E.2d 877 (1986) (physician-patient privilege); *State v. Port Clinton Fisheries, Inc.*, 12 Ohio St.3d 114, 465 N.E.2d 865 (1984) (informant confidentiality). The reason for finding an immediate need for review in those cases was that they

> implicated underlying privacy or law enforcement interests that
> extended beyond any particular litigation. While an appellate court
> could provide some relief after final judgment from the disclosure

10

of such privileged information, such relief could not adequately undo the extrajudicial harm done to those interests by disclosure.

*Nelson v. Toledo Oxygen & Equip. Co., Inc.*, 63 Ohio St.3d 385, 389, 588 N.E.2d 789 (1992). Under the same standard, we determined that an order compelling production of materials allegedly protected by the work-product doctrine under Civ.R. 26(B)(3) was not a final, appealable order. *Nelson* at syllabus. The reason for finding no need for immediate review in this latter situation was:

Because the work-product exemption protects materials that are peculiarly related to litigation, any harm that might result from the disclosure of those materials will likewise be related to litigation. An appellate court review of such litigation will necessarily be able to provide relief from the erroneous disclosure of work-product materials.

*Id.* at 389.

{¶ 25} Exposure of the information that is to be protected by attorney-client privilege destroys the confidentiality of possibly highly personal or sensitive information that must be presumed to be unreachable. *Taylor v. Sheldon*, 172 Ohio St. 118, 121, 173 N.E.2d 892 (1961). We have already recognized that an order compelling production of material covered by the attorney-client privilege is an example of that for which there is no effective remedy other than immediate appeal as contemplated by R.C. 2505.02(B)(4)(b). *Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092 (2001), citing *Cuervo v. Snell*, 10th Dist. Franklin Nos. 99AP-1442, 99AP-1443, and 99AP-1458, 2000 WL 1376510 (Sept. 26, 2000).

{¶ 26} But the same guarantee of confidentiality is not at risk with an attorney's work product. And as we stated in *Nelson*, any harm from disclosure

would likely relate to the case being litigated, meaning that appellate review would more likely provide appropriate relief. *Nelson* at 389. This is not to say that compelling the disclosure of an attorney's work product pursuant to Civ.R. 26(B)(3) would never satisfy R.C. 2505.02(B)(4)(b) and require an interlocutory appeal. But it does not necessarily involve the inherent, extrajudicial harm involved with a breach of the attorney-client privilege.

**Limitation of *Chen***

{¶ 27} We were unable to explore the relationship between the attorney work-product doctrine and R.C. 2505.02(B)(4)(b) in *Chen* despite our request to show cause. We dismissed *Chen* for lack of a final, appealable order, holding that an appellant must demonstrate that "[a]n order compelling disclosure of privileged material [ ] would *truly* render a postjudgment appeal meaningless or ineffective." (Emphasis sic.) *Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 9. Our use of "privilege" in the looser, popular sense seems to have suggested that *Chen* did create a new rule. But *Chen*'s actual holding was not broad or expansive, being limited to the attorney work-product doctrine. We now clarify that *Chen* did not apply to the attorney-client privilege.

{¶ 28} Finally, because responses to motions to compel may assert various claims of privilege in resisting disclosure of materials, a trial court should explain why a motion granting production has been granted. In that way, a reviewing court can determine the pertinent issues and whether the requirements of R.C. 2505.02(B)(4)(a) and (b) are satisfied.

{¶ 29} Here, although the trial court's order compelling the disclosure of the Clinic's incident report did not specify why it was rejecting the claim of attorney-client privilege or other protections claimed, it is clear from the briefing that the attorney-client privilege had been rejected and was the only remaining discovery protection being sought. Because the Clinic raised a colorable claim that

its report was protected by the attorney-client privilege, the court's order compelling disclosure of that report was a final, appealable order.

**CONCLUSION**

**{¶ 30}** An order compelling the production of materials alleged to be protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4). Prejudice would be inherent in violating the confidentiality guaranteed by the attorney-client privilege, and therefore, an appeal after final judgment would not provide an adequate remedy. We reverse the judgment of the Eighth District Court of Appeals and remand the cause to that court for consideration of the merits of the Clinic's appeal.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and O'NEILL, J., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by O'DONNELL and FRENCH, JJ.

PFEIFER, J., dissents, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

**{¶ 31}** I concur that the trial court's order to provide Darlene Burnham with the Cleveland Clinic's July 2012 incident report is final and appealable. I cannot join in the court's opinion, however, because its analysis is incomplete and disingenuous.

**{¶ 32}** Before this court's decision in *Smith v. Chen*, the law of whether a trial court's order to compel discovery of a privileged document was a final, appealable order was stable and predictable. 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 14 (Kennedy, J., dissenting). Every appellate district across Ohio had determined that "[o]rders compelling discovery of privileged information [were] "final, appealable orders under R.C. 2505.02(B)(4)." *Id.* In holding

otherwise, *Chen* did not distinguish between material privileged as attorney work product or as attorney-client communications. *Id*. at ¶ 5, 8, 9.

{¶ 33} As a result of *Chen*, a split has now developed among the appellate districts. *See Walker v. Taco Bell*, 1st Dist. Hamilton No. C-150182, 2016-Ohio-124, ¶ 8; *Nationwide Mut. Fire Ins. Co. v. Jones*, 4th Dist. Scioto No. 15CA3709, 2016-Ohio-513, ¶ 11; *Lavin v. Hervey*, 5th Dist. Stark No. 2015CA00021, 2015-Ohio-3458, ¶ 12. Instead of admitting its mistake and overruling *Chen* with the tripartite test established in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus, the court's opinion doubles down and creates new law wherein a discovery order that is alleged to breach the confidentiality guaranteed by the attorney-client privilege satisfies R.C. 2505.02(B)(4)(b) and is a final, appealable order, [but] [o]ther discovery protections that do not involve common law, constitutional, or statutory guarantees of confidentiality, such as the attorney work-product doctrine, *may* require a showing under R.C. 2505.02(B)(4)(b) beyond the mere statement that the matter is privileged. (Emphasis added.) Court opinion at ¶ 2.

{¶ 34} This conclusion, however, is myopic. It does not recognize the common-law origins of the work-product doctrine and that some of the protection provided by the work-product doctrine exceed the protection of Civ.R. 26(B)(3). The conclusion also elevates statutory privileges over the work-product doctrine set forth in Civ.R. 26(B)(3), even though the Civil Rules are promulgated pursuant to the authority conferred upon the court by the Ohio Constitution.

{¶ 35} Moreover, the conclusion ignores that Civ.R. 26 provides protection to a broader class of documents and materials than does the attorney-client privilege. Accordingly, the court's opinion is denying "a meaningful or effective remedy by an appeal following final judgment," R.C. 2505.02(B)(4)(b), to orders to produce documents protected by the work-product doctrine. *See State v. Muncie*,

14

91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001). The consequences will be far-reaching.

{¶ 36} Because I cannot agree that the protection afforded attorney work product can be parsed between whether we use the word privilege in a "strict" or "loose" sense or that an order compelling the disclosure of attorney work product will render a "meaningful or effective remedy" on appeal, I concur in judgment only. I would hold that an order requiring the release of privileged documents, whether protected by the attorney-client privilege or work-product doctrine, is a final, appealable order because the " 'proverbial bell cannot be unrung,' " *Muncie* at 451, quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). I would therefore overrule *Chen* in accord with *Galatis* and restore stability and predictability to Ohio law.

I.      *Smith v. Chen*

{¶ 37} The court's opinion obfuscates its holding in *Chen*, alternatively limiting *Chen* to "its facts," Court opinion at ¶ 9, when not limiting it to all cases involving the work-product doctrine, Court opinion at ¶ 14. This is all after creating a new, mysterious test for determining whether discovery orders in work-product-doctrine cases are final, appealable orders, Court opinion at ¶ 2. Henceforth, says the court opinion, discovery protections involving the attorney work-product doctrine "*may* require a showing under R.C. 2505.02(B)(4)(b) beyond the mere statement that the matter is privileged." (Emphasis added.) Court opinion at ¶ 2. The court offers no pathway for judges and litigants to determine when, how, or before whom that showing is to be made.

{¶ 38} For a case that has no bearing on the instant controversy and does not announce a "new rule," Court opinion at ¶ 14, the court's opinion expends pages explaining and defending its decision in *Chen*, a case that was dismissed for lack of a final, appealable order. While the treatment of *Chen* in this case is perplexing, blaming Chen's counsel for the erroneous outcome because "*Chen* involved a

failure to respond the issue being adjudicated" is inexcusable. Court opinion at ¶ 14.

{¶ 39} We accepted the following proposition of law in *Chen*: "The Tenth District's decision is one of first impression in that it has allowed during the course of discovery for the production of surveillance videotapes to be used for impeachment purposes in direct violation of Ohio's work-product doctrine as set forth in Civ.R. 26(B)(3)." *State v. Chen*, 138 Ohio St.3d 1447, 2014-Ohio-1182, 5 N.E.3d 666.

{¶ 40} Because this court issued a show-cause order on a matter that "was not raised or briefed by the parties," *Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 12 (Kennedy, J., dissenting), I'm not sure what counsel for Chen could have done to satisfactorily obey the court's order. This court does not permit the submission of evidence on appeal. *State v. McKelton*, __ Ohio St.3d __, 2016-Ohio-5735, __ N.E.2d __, ¶ 79, citing *State v. Keith,* 79 Ohio St.3d 514, 536-537, 684 N.E.2d 47 (1997). Therefore, counsel for Chen responded in the only manner possible, by citing the law in its appellate district: "[T]he Tenth District Court of Appeals' determination that the discovery order commanding the release of attorney work product was a final, appealable order." *Chen* at ¶ 12 (Kennedy, J. dissenting). This court ignored, however, the appellate court's discussion of "the interlocutory nature of discovery orders" and its reliance on the established precedent of *Legg v. Hallet*, 10th Dist. Franklin No. 07AP-170, 2007-Ohio-6595, ¶ 15. *Chen*, at ¶ 13 (Kennedy, J. dissenting). Also ignored was the fact that counsel for Smith did not respond to the show-cause order at all. Counsel for Chen fulfilled their professional duties before this court.

II.     Attorney-Client Privilege and Work-Product Privilege Generally

{¶ 41} In its attempt to salvage *Chen*, the court opinion manufactures an artificial distinction between a "strict sense" and a "popular sense" of "privilege" and then creates a narrative to support the appearance of adhering to precedent.

16

"Privilege" is defined as a "special legal right, exemption, or immunity granted to a person or class of persons; an exemption to a duty." *Black's Law Dictionary* 1390 (10th Ed.2014). As it relates to discovery, privilege provides "qualified immunity of an attorney's work product from discovery or other compelled disclosure." *Id.* at 1844. A "privileged communication" is a "communication that is protected by law from compelled disclosure in a legal proceeding." *Id.* at 337. "Attorney-client privilege" is the "client's right to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney. *Id.* at 1391. In other words, both the work-product doctrine and attorney-client privilege involve privilege.

{¶ 42} In *Squire, Sanders & Dempsey, L.L.P v. Givaudan Flavors Corp.*, we explained the distinction between the attorney-client privilege and the work-product privilege. 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 16 and 55. Recognized as one of the oldest confidential privileges to promote full, frank communication between attorneys and clients, the attorney-client privilege is codified in R.C. 2317.02(A), and for those cases not covered by the statute, by common law. *Id.* at ¶ 16-17. The attorney-client privilege is held by the client, is waivable, and is subject to several recognized exceptions. *Id.* at ¶ 16-54.

{¶ 43} *Squire* also traced the origin of the work-product doctrine. *Id.* at ¶ 54. The United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947) explained that the work-product doctrine is a qualified privilege that protects the mental processes of the attorney. In Ohio, it is partially codified in Civ.R. 26. *Squire* at ¶ 54-55, 58.

{¶ 44} To further distinguish between the attorney-client privilege and the work-product privilege, the court opinion focuses on the source of the protection. The attorney-client privilege was recognized at "common law" and is protected by R.C. 2317.02(A), while the attorney work-product privilege is not protected by common law or statute, but rather by Civ.R. 26, according to the court opinion.

Court opinion at ¶ 17.  From this distinction, the court opinion creates a new rule and distinguishes *Chen*—specifically, that a discovery order that is alleged to breach attorney-client privilege automatically satisfies R.C. 2505.02(B)(4)(b) and is a final, appealable order, but that the work-product doctrine, which does not "involve common law, constitutional, or statutory guarantees of confidentiality * * * may require a showing under R.C. 2505.02(B)(4)(b) beyond the mere statement that the matter is privileged."  Court opinion at ¶ 2.  This declaration however, demonstrates that the court opinion has no understanding of the development of the work-product doctrine, the constitutional underpinnings of Ohio's work-product doctrine, or the nuances of Civ.R. 26.

III.     Common-Law Development of Work-Product Doctrine

{¶ 45} "Common law" is [t]he body of law derived from judicial decisions, rather than from statutes or constitutions."  *Black's* at 334.

A.  English Common Law

{¶ 46} While a treatise could be written on the development of the work-product doctrine in England, it is sufficient to begin with the United States Supreme Court's recognition in *Hickman* that "English courts have developed the concept of privilege to include all documents prepared by or for counsel with a view to litigation."  329 U.S. at 510, 67 S.Ct. 385, 91 L.Ed. 451, fn. 9.

{¶ 47} English common law developed "seven grounds" of privilege on which a production request could be denied.  Odgers & Harwood, *Principles of Pleading and Practice in Civil Actions in the High Court of Justice* 262 (12th Ed.1939).  One was "documents prepared with a view to litigation"—that is, documents "called into existence with the purpose—but not necessarily the sole purpose—of assisting the deponent or his legal advisers in any actual or anticipated litigation."  *Id.* at 264.

{¶ 48} For example, in the British case *Birmingham & Midland Motor Omnibus Co. v. London & N.W. Ry Co.*, 3 K.B. 850, 856 (1913), the appellate court

upheld the trial court's denial of the plaintiff's discovery request of documents that had been prepared in anticipation of litigation. *Id*. at 856. *See also Adam Steamship Co., Ltd. v. London Assur. Corp.*, 3 K.B. 1256 (1914).

{¶ 49} Additionally, in denying a motion for the production of documents, namely a report of an accountant and draft of pleadings, Vice-Chancellor Sir W. Page Wood held that when a solicitor employs a person to "assist him and to give his opinion, such communications are as much privileged as if they came from the solicitor himself." *Walsham v. Stainton*, 2 H. & M. 357, 358 (1863). *See also Goldstone v. Williams, Deacon & Co.*, 1 Ch.D. 47 (1899).

{¶ 50} In another case involving denying an application for inspection of documents that contained information that plaintiffs obtained "with a view to consulting their professional adviser," Cockburn, C.J. stated that maintaining the confidences between a client and solicitor are "essential to the interests of justice and the well-being of society." *Southwark & Vauxhall Water Co. v. Quick,* 3 Q.B.D. 315, 317-318 (1878). *See also Ankin v. London & N.E. Ry. Co.*, 1 K.B. 527 (1930).

### B. Ohio Common Law

{¶ 51} Like the English pleading system, Ohio established a statutory pleading system. Ohio Legislative Service Commission, *Problems of Judicial Administration* 48 (Feb.1965). In conjunction, procedural rights to obtain discovery and remedies to secure it were developed. Woodle, *Discovery Practice in Ohio—Pathway to Progress*, 8 Case W.Res.L.Rev. 117, 119-120 (1957). However, confronting Ohio lawyers was "[t]he common law [which] generally allowed litigant parties to conceal from each other, up to the time of trial, the evidence on which they meant to rely, and would not compel either of them to supply * * *." *Id*. at 120, quoting *Reynolds v. Burgess Sulphite Fiber Co.*, 71 N.H. 332, 334, 51 A. 1075 (1902). And the historical basis for discovery proceedings in Ohio was judicial pronouncements. *Id*. at 121.

**{¶ 52}** While statutes required parties to "produce" evidence, this court was carving out exceptions. *See Ex parte Schoepf*, 74 Ohio St. 1, 77 N.E. 276 (1906), *overruled in part on other grounds by Ex parte Martin*, 141 Ohio St. 87, 47 N.E.2d 388 (1943), paragraph four of the syllabus. In reversing judgments of the trial and circuit courts that held a witness in contempt for refusing to answer deposition questions and produce documents pursuant to a statute, this court declared:

> The statement of the witness that the reports were made in anticipation of possible litigation and that they are in possession of counsel for use in the suit which did ensue stands uncontradicted, and must, therefore, be taken as true. This clearly brings the documents within the rule as to privilege; and we see no reason to limit or modify the rule because the defendant is a corporation and obtained its information and made its memoranda for the purposes stated, through the usual agencies of a corporation.

(Emphasis added.) *Id.* at 15-16.

IV.     Enactment of the Federal Rules of Civil Procedure

**{¶ 53}** The United States Supreme Court promulgated the Federal Rules of Civil Procedure in 1938. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C.L.Rev. 691 (1998), fn. 4. The Rules merged law and equity proceedings and simplified the pleading practice, thereby expanding the need and role of discovery. Anderson, Cadieux, Hays, Hingerty, & Kaplan, *The Work Product Doctrine*, 68 Cornell L.Rev. 760, 766-767 (1983). Fed.R.Civ.P. 26 created a "pre-trial deposition-discovery mechanism" requiring the disclosure of "any relevant matter which is not privileged." *Hickman,* 329 U.S. 495, 500 and 507, 67 S.Ct. 385, 91 L.Ed. 451.

V.     *Hickman v. Taylor:*  Federal Common-Law Work-Product Doctrine

**{¶ 54}** After the implementation of the Federal Rules of Civil Procedure, "a great divergence of views among the district courts" emerged regarding the protection of the work product of the lawyer.  *Id*. at 500.  As characterized by the court, the facts of *Hickman* presented the problem of "the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen."  *Id*. at 497.

**{¶ 55}** In *Hickman*, a tug boat owned by Taylor sank, killing five of the nine crew members, on February 7, 1943.  329 U.S. at 498.  To defend against a possible suit, the tug owner and underwriter hired a lawyer, who "privately interviewed the survivors and took statements from them with an eye toward the anticipated litigation" and interviewed others.  *Id*.  He reduced some of those interviews to memoranda.  *Id*.

**{¶ 56}** Hickman, a representative of a deceased crewmember, brought suit and submitted interrogatories to the tug owners.  In addition, he sought copies of statements of any interviews.  *Id*. at 498-499.  Counsel for the tug owners asserted privilege over the statements of survivors because they had been " 'obtained in preparation for litigation,' " and seeking them constituted an attempt to " 'obtain indirectly counsel's private files.' "  *Id*. at 498.

**{¶ 57}** The trial court held that the matters were not privileged and ordered them disclosed.  *Id*. at 500.  The court of appeals reversed, holding "that the information here sought was part of the 'work product of the lawyer' and hence privileged from discovery under the Federal Rules of Civil Procedure."  *Id*.  The United States Supreme Court granted certiorari and affirmed.  *Id*.

**{¶ 58}** While recognizing that the "deposition-discovery rules are to be accorded a broad and liberal treatment" and are to permit "either party [to] compel the other to disgorge whatever facts he has in his possession," the procedure

nevertheless has "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507, 67 S.Ct. 385, 91 L.Ed. 451.

{¶ 59} In rejecting the holding of the district court, the court held:

> In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances. *That is not because the subject matter is privileged or irrelevant, as those concepts are used in these rules.* Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, *it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defenses of legal claims.* Not even the most liberal discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

(Emphasis added.) *Id.* at 509-510.

{¶ 60} "That was 1947; the work-product doctrine was case law." Cohn, *The Work-Product Doctrine: Protection, Not Privilege*, 71 Geo.L.J. 917, 920 (1983). This doctrine acknowledging the existence of the federal attorney-work-product privilege would last for 23 years. During that time, district courts "struggled to put flesh on the doctrine," and decisions were inconsistent. *Id.*

{¶ 61} In 1953, the Advisory Committee proposed changes to the Federal Rules of Civil Procedure to "clarify the effect of Hickman." Anderson, 68 Cornell L.Rev. at 782. However, the amendments regarding *Hickman* were rejected. *Id.* at 783. Extensive amendments to the Rules resulted in a new Fed.R.Civ.P. 26(B)(3) in 1970, which codified *Hickman*, but not completely. *Id.* at 783.

VII.    Promulgation of the Ohio Rules of Civil Procedure

**{¶ 62}** The simplification of civil litigation was achieved with the promulgation of the Ohio Rules of Civil Procedure.  The genesis of the Rules was the 1968 passage of Issue 3, after approval by the General Assembly, which resulted in the Modern Courts Amendment's becoming part of the Ohio Constitution. Milligan & Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811 (1968), citing 1967 Am.Sub.H.J.Res.No. 42; *see also* Article IV, Section 5(B), Ohio Constitution.

**{¶ 63}** One aspect of the amendment was a recognition that the "keystone to the reform of judicial procedure was the conferring of rule-making power on the courts."  Corrigan, *A Look at the Ohio Rules of Civil Procedure*, 43 Ohio St.Bar Assn. Rep. 727, 728 (1970).  *See also Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2 (Modern Courts Amendment conferred authority on this court "to promulgate rules relating to matters of procedure in courts of Ohio").  The amendment empowered this court—not the General Assembly—with rulemaking authority.  *Id.*  "The power vested in the Court is complete," Corrigan at 728, because the "[p]rocedural rules promulgated pursuant to the Modern Courts Amendment supersede conflicting statutes that affect procedural matters."  *Havel*, at ¶ 2.

**{¶ 64}** Thereafter, the Supreme Court of Ohio directed the Rules Advisory Committee to propose the Ohio Rules of Civil Procedure for its consideration, recommending that the Federal Rules of Civil Procedure be the general model. Corrigan at 728.  Modeling Ohio's Rules on the Federal Rules was a "distinct advantage," as there was "a considerable body of decisions" interpreting and applying the Federal Rules, and some states had adopted similar rules.  *Id.* at 729.

**{¶ 65}** The Rules promulgated by the court, effective July 1, 1970, unified and simplified the discovery practice that previously "had been based on a

conglomerate of statutes, case law and custom. 1970 Staff Notes 1, Civ.R. 26. A review of Civ. R. 26 as promulgated in 1970 reveals these roots.

VIII.   Civ.R. 26 as Promulgated in 1970

{¶ 66} Both the original and current Civ.R. 26(A) (in which a reference to electronically stored information has been added—otherwise the versions are the same) set forth the policy of the rules:

(A) Policy; discovery methods. It is the policy of these rules (1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of an adversary's industry or efforts.

{¶ 67} This language was not contained within the Federal Rules, but was a statement of Ohio policy for interpreting the discovery rules. 1970 Staff Notes 2, Civ.R. 26. It was taken almost verbatim from the California Code of Civil Procedure. *See* Knepper, *Ohio Civil Practice*, Section 6.05, at 122 (1975). The California legislature added this language "to correct unduly liberal rulings of the California courts invading the work product of attorneys." *Id.* Knepper opined that the provision is supportive of Justice Robert Jackson's concurring opinion in *Hickman,* 329 U.S. at 514-519, 67 S.Ct. 385, 91 L.Ed. 451, "which emphasized the necessity of preserving the independence of the lawyer and the adversary system." Knepper at 122, fn. 60.

{¶ 68} Except for reference to electronically stored material, the language of Civ.R. 26(B)(1) and (3) is the same today as when promulgated in 1970. Civ.R. 23(B)(1) provides the scope of discovery and adopts the liberal philosophy of the Federal Rules. However, Civ.R. 26(B)(3) reveals that while liberal, discovery is

not an entitlement. Civ.R. 26(B)(3) carves out a conditional exception for privileged materials—"documents and tangible things prepared in anticipation of litigation or for trial" by or for the adverse party or party's representative, including counsel. As discussed above, the recognition of these materials as falling within the definition of privileged materials and therefore excluded from discovery unless good cause is demonstrated finds its roots in case law. *See In re Hyde,* 149 Ohio St. 407, 79 N.E.2d 224 (1948), paragraph one of the syllabus (reports concerning accident involving company vehicle are privileged when made in course of business and turned over to company's legal counsel); *In re Keough,* 151 Ohio St. 307, 85 N.E.2d 550 (1949), paragraph two of the syllabus (same). Moreover, while liberalizing the discovery practice, Civ. R. 26(B)(3) "does not destroy the privacy of the attorney's mental impressions or the concept that each side should prepare its case independently. It does not allow the lazy lawyer to automatically have the fruits of the work of the diligent lawyer." 1970 Staff Note 3(c), Civ.R. 26(B)(1).

XI. Shortcomings of the Court Position

**{¶ 69}** The court opinion's analysis fails to perceive the larger picture. It does not recognize that the protection provided by the work-product doctrine originated in English, federal, and Ohio common law. Accordingly, under the court opinion's reasoning, a discovery order alleging a breach of this protection would not require a showing under R.C. 2505.02(B)(4)(b) beyond the trial court's statement that the matter is privileged. Court opinion at ¶ 2.

**{¶ 70}** Moreover, the court opinion does not appreciate that the work-product doctrine provides protection outside the scope of Civ.R. 26(B)(3) (trial preparation-materials):

While the protections for attorney work product provided in Civ.R. 26(B)(3) expressly apply to "documents, electronically stored information and tangible things prepared in anticipation of

litigation," protection also extends to intangible work product. *Hickman,* 329 U.S. at 511, 67 S.Ct. 385, 91 L.Ed. 451; *In re Cendant Corp. Securities Litigation* (C.A.3, 2003), 343 F.3d 658, 662; *United States v. One Tract of Real Property* (C.A.6, 1996), 95 F.3d 422, 428, fn. 10; 8 Wright, Miller, Kane & Marcus, Federal Practice and Procedure (3d Ed.2009), Section 2024. The protection for intangible work product exists because "[o]therwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions." *In re Seagate Technology, L.L.C.* (C.A.Fed., 2007), 497 F.3d 1360, 1376.

*Squire,* 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 58. Resolution of this category of work-product doctrine disputes is by common law. So again, under the court opinion's reasoning, an order arising from this situation would qualify as a discovery order that would need only the statement that the matter is privileged to meet the final-appealable-order requirement of R.C. 2505.02(B)(4)(b). Court opinion at ¶ 2.

{¶ 71} The court opinion is also diminishing the significance of our procedural rules, which draw their authority from the Ohio Constitution. As set forth above, Article IV, Section 5(B) was added to the Ohio Constitution pursuant to the 1968 Modern Courts Amendment and conferred upon this court the authority to promulgate rules of procedure. *Havel*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2. The procedural rules are controlling unless the General Assembly enacts a conflicting law affecting a substantive right. *See Morris v. Morris*, __ Ohio St.3d __, 2016-Ohio-5002, __ N.E.2d __, ¶ 43. Moreover, procedural rules "supersede conflicting statues that affect procedural matters." *Havel* at ¶ 2. Additionally, under the court opinion's reasoning, a discovery order alleging a breach of the work-product protection would not require a showing under R.C.

2505.02(B)(4)(b) beyond the mere statement that the matter is privileged, as the authority for the promulgation of Civ.R. 26 is the Ohio Constitution. Court opinion at ¶ 19.

{¶ 72} The short shrift with which the court opinion treats the work-product privilege, an interrelated and vital aspect of the administration of justice in the protection of the attorney and client relationship, is alarming. As *Hickman* states:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories, and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, or course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed * * * the " '[w]ork product of a lawyer.' " Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal

profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. * * * But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

329 U.S. at 510-512, 67 S.Ct. 385, 91 L.Ed. 451.

{¶ 73} With this decision, the court opinion systematically declares that a document allegedly privileged under the work-product doctrine does not meet the standard established in R.C. 2505.02(B)(4)(b) unless some special showing is somehow made. Given that Civ.R. 26 provides protection to a broad class of documents and materials, the release of privileged documents necessarily puts the party protecting these materials into the category of those "not * * * afforded a meaningful or effective remedy by an appeal following final judgment." A released document never regains privileged status. The "proverbial bell cannot be unrung." *See Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092.

X.     *Smith v. Chen* Should Be Overruled

{¶ 74} The diminution in status of the work-product privilege by the court opinion will in my view cause irreparable harm. Moreover, this decision will not settle the law that has now been upended. Limiting *Chen* as applying only to an

asserted privilege for work-product materials and not to materials covered by attorney-client privilege is without basis, and the folly of that exercise will been seen in the litigation that is sure to follow. The only proper way to resolve the problem that we have created is to apply *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus, to overrule *Chen*: "A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it."

**{¶ 75}** First, *Chen* was wrongly decided. Without warning, *Chen* overruled long-established precedent in every Ohio appellate district. *Chen,* 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 14 (Kennedy, J., dissenting). Indeed, the court opinion relies on precedent that also rejects the analysis and holding of *Chen*. Court opinion at ¶ 20, citing *Muncie*, 91 Ohio St.3d at 446, 746 N.E.2d 1092.

**{¶ 76}** Second, *Chen* has proven difficult to apply. *Chen* offers no guidance as to what R.C. 2505.02(B)(4)(b) requires in order to render an appeal of an order compelling disclosure of allegedly privileged material "*truly * * * meaningless.*" (Emphasis sic.) *Chen* at ¶ 9. And this decision limiting *Chen* to claims of privilege regarding material sought under the work-product doctrine does not offer any enlightenment.

**{¶ 77}** Finally, since *Chen* was decided last year and has been inconsistently applied by the lower courts, the number of cases seeking clarification from us continues to grow. *See, e.g., In re Grand Jury Proceedings of Doe*, *jurisdiction accepted at* __ Ohio St.3d __, 2016-Ohio-467, __ N.E.3d __; *Mentor Way Real Estate Partnership v. Hertanu, jurisdiction declined at* __ Ohio St.3d __, 2016-Ohio-5792, __ N.E.3d __; and *Branche v. Motorists Mut. Ins. Co.*, *jurisdiction declined at* __ Ohio St.3d __, 2016-Ohio-7877, __ N.E.3d __. Overruling *Chen*

would return stability to the law. Consequently, *Chen*'s demise will not create an undue hardship.

{¶ 78} As a result of the court opinion's disparate treatment of privileged documents, I predict three outcomes. First, Ohio lawyers will now have to gauge the risk of creating and preparing documents and materials. Second, the cost of protecting privileged materials will significantly increase as litigants expend large sums to protect the work product of their attorneys. Third, this court will continue to distinguish *Chen* "to the vanishing point, creating an illusion of certainty in the law while leaving only a shadow of an ancient landmark." *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 406, 85 S.Ed. 1517, 14 L.Ed.2 466 (Douglas, J., dissenting). However, "[a]s far as I am aware, the public is not under the illusion that we are infallible. I see little harm in admitting that we made a mistake * * *." *Dickerson v. United States*, 530 U.S. 428, 464, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (Scalia, J., dissenting).

{¶ 79} Because I would overrule *Chen* in accordance with *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, and restore the stability and predictability to the law as it existed before *Chen*, I concur in judgment only.

O'DONNELL and FRENCH, JJ., concur in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 80} I dissent from elevating the incident report in this case to the exalted status of being the product of attorney-client privilege, requiring the immediate intervention of the appellate court to protect the Cleveland Clinic from what exactly—the disclosure of its top-secret ratio of water to Mop & Glo? This was a run-of-the-mill, wet-floor, slip-and-fall case that generated an automatically produced report, a business record that involved in its production no interaction between the client and its in-house or outside counsel; its purpose was to notify the risk-management and law departments of an event that might result in legal action.

{¶ 81} "Trial courts * * * have extensive jurisdiction over discovery, including inherent authority to direct an *in camera* inspection of alleged privileged materials * * *." *State ex rel. Abner v. Elliott*, 85 Ohio St.3d 11, 16, 706 N.E.2d 765 (1999). The trial court did its job here and found the report to not be privileged; its decision can be reviewed on appeal in due course without doing damage to the sanctity of the attorney-client privilege.

_____

Obral, Silk & Associates, L.L.C., Alexander L. Pal, and Thomas J. Silk, for appellee.

Bonezzi, Switzer, Polito & Hupp Co. L.P.A., Bret C. Perry, and Jason A. Paskan, for appellants.

Reminger Co., L.P.A., and Martin T. Galvin, urging reversal for amicus curiae Academy of Medicine of Cleveland & Northern Ohio.

Bricker & Eckler L.L.P, Anne Marie Sferra, and Kara Herrnstein, urging reversal for amici curiae Ohio Hospital Association and Ohio State Medical Association.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

_____